COPY

1   Peter M.K. Frost, *application for pro hac vice pending*
    Western Environmental Law Center
2   1216 Lincoln Street
    Eugene, Oregon 97401
3   Tel: 541-485-2471
    Fax: 541-485-2457
4   frost@westernlaw.org

5   Marc D. Fink, *application for pro hac vice pending*
    Center for Biological Diversity
6   4515 Robinson Street
    Duluth, Minnesota 55804
7   Tel: 218-525-3884
    Fax: 218-525-3857
8   mfink@biologicaldiversity.org

9
    Lisa T. Belenky (CA Bar No. 203225)
10  Center for Biological Diversity
    1095 Market St., Suite 511
11  San Francisco, California 94103
    Tel: 415-436-9682 x 307
12  Fax: 415-436-9683
    lbelenky@biologicaldiversity.org

13
    Attorneys for Plaintiffs

14                          UNITED STATES DISTRICT COURT FOR THE

15                          NORTHERN DISTRICT OF CALIFORNIA

16                              SAN FRANCISCO DIVISION        C 07 3831    SC

17   CITIZENS  FOR  BETTER  FORESTRY,  )
     ENVIRONMENTAL     PROTECTION  )
18   INFORMATION   CENTER,   CENTER   FOR  )   **Case No:**
     BIOLOGICAL   DIVERSITY,   WILD   WEST  )
19   INSTITUTE, GIFFORD PINCHOT TASK FORCE,  )
     KETTLE RANGE CONSERVATION GROUP,  )   **COMPLAINT FOR DECLARATORY**
20   IDAHO SPORTING CONGRESS, FRIENDS OF  )   **AND INJUNCTIVE RELIEF**
     THE    CLEARWATER,    UTAH  )
21   ENVIRONMENTAL CONGRESS, CASCADIA  )   Administrative Procedure Act Case
     WILDLANDS PROJECT, KLAMATH SISKIYOU  )
22   WILDLANDS   CENTER,   SOUTHERN  )
     APPALACHIAN   BIODIVERSITY   PROJECT,  )
23   THE LANDS  )
                                            )
24           Plaintiffs,  )
                                            )
25              v.  )
                                            )
26   UNITED    STATES    DEPARTMENT    OF  )
     AGRICULTURE, and UNITES STATES FOREST  )
27   SERVICE,  )
                                            )
28           Defendants.  )

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                      Page 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.    This is a civil action for declaratory and injunctive relief. Plaintiffs challenge Defendants' April 27, 2007, decision to reinstate and implement the 2000 National Forest Management Act planning rule ("2000 Rule"). The United States Court of Appeals for the Ninth Circuit and this Court previously determined that Defendants violated the National Environmental Policy Act ("NEPA") in promulgating the 2000 Rule, and Defendants previously withdrew and removed the 2000 Rule. Plaintiffs therefore seek a declaration that Defendants' decision to now reinstate and implement the 2000 Rule, without any public notice or comment, or environmental analysis, violates the Administrative Procedure Act ("APA") and NEPA. Plaintiffs seek to enjoin Defendants from further implementation of the 2000 Rule, pending compliance with the APA and NEPA.

2.    Should Plaintiffs prevail on the merits, Plaintiffs will seek an award of costs and attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

**JURISDICTION**

3.    Jurisdiction is proper in this Court under 28 U.S.C. § 1331 and 28 U.S.C. § 1346, because this action involves the United States as a defendant, and it arises under the laws of the United States, including the APA, 5 U.S.C. §§ 701 *et seq.*; and NEPA, 42 U.S.C. §§ 4321 *et seq.* An actual, justiciable controversy exists between Plaintiffs and Defendants. The requested relief is proper under 28 U.S.C. §§ 2201-02 and 5 U.S.C. §§ 705 & 706. The challenged agency action is final and subject to this Court's review under 5 U.S.C. §§ 702, 704, and 706.

**VENUE AND INTRADISTRICT ASSIGNMENT**

4.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e). Plaintiff Environmental Protection Information Center has its primary office in Garberville, which is located in Humboldt County, California. Plaintiff Center for Biological Diversity has an office in San Francisco, California. Additional Plaintiffs have members and staff that work or reside within the district. Defendants also have offices within the district. More than 1.5 million acres of National Forest lands are also located within the district, and are affected by the challenged

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                      Page 2

1  decision, including but not limited to the Six Rivers National Forest. L.R. 3-2. Assignment is

2  proper in this district and division for the same reasons. L.R. 3-2, 3-5.

3  **PARTIES**

4  5.    Plaintiff CITIZENS FOR BETTER FORESTRY is a 501(c)(3) nonprofit public

5  interest organization organized under the laws of California and dedicated to the protection of

6  public forest lands in northern California. Representing hundreds of individuals throughout the

7  region, Citizens for Better Forestry promotes sound science-based management and watershed

8  restoration, and researches, educates, and advocates for the protection and recovery of biological

9  diversity and ecological integrity in the region. Citizens for Better Forestry works to generate

10  local citizen activism and a greater awareness of forest management practices and impacts to old-

11  growth forests, critical salmonid watersheds, roadless areas, and other important habitats in the

12  Klamath-Siskiyou ecoregion.

13  6.    Plaintiff ENVIRONMENTAL PROTECTION INFORMATION CENTER

14  ("EPIC") is a non-profit corporation organized under the laws of California, dedicated to the

15  protection and restoration of forests, watersheds, and biodiversity in northern California. Formed

16  in 1977, EPIC has approximately 2,000 members and supporters, and maintains offices in

17  Garberville and Eureka in Humboldt County, California. EPIC's National Forest Program

18  monitors projects on four national forests in California: the Klamath, Shasta-Trinity, Six Rivers,

19  and Mendocino. EPIC's members, staff, and board use and enjoy each of these forests, and are

20  particularly interested in those parts of the national forests where relatively intact, mature and old

21  growth forests remain.

22

23  7.    Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a conservation

24  organization with over 35,000 members nationwide. The Center has offices in California,

25  including San Francisco, Shelter Cove, San Diego, and Joshua Tree. The Center regularly

26  submits comments and is involved in projects that are proposed on national forests, including the

27  national forests in California. The Center uses the National Forest Management Act and its

28  implementing regulations in its efforts to conserve and protect national forests in the West.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    Page 3

8.    Plaintiff WILD WEST INSTITUTE is a non-profit corporation based in Missoula, Montana.  Wild West's mission is to protect and restore forests, wildlands, watersheds and wildlife in the Northern Rockies.  Wild West empowers citizens to effectively participate in the public land management decision processes on nearly 20 national forests.  Its staff and board also work to help craft positive solutions that promote sustainability in communities in the Northern Rockies through restoring naturally functioning ecosystems.

9.    Plaintiff GIFFORD PINCHOT TASK FORCE is a nonprofit conservation organization headquartered in Portland, Oregon.  The mission of the Gifford Pinchot Task Force is to protect and restore the ecosystems and communities of Southeast Washington, with a particular focus on the Gifford Pinchot National Forest.  The Gifford Pinchot Task Force serves as an informational and educational resource on forest ecosystems of southwest Washington for interested citizens and organizations through a variety of avenues, including grassroots organizing and legal advocacy.  The Gifford Pinchot Task Force has over 3,000 members who use the Gifford Pinchot National Forest for many purposes including recreational pursuits, wildlife study, and Native American traditional ceremonies.

10.    Plaintiff KETTLE RANGE CONSERVATION GROUP is a regional conservation group with over 800 members.  Kettle Range Conservation Group is established as a nonprofit 501(c)(3) corporation organized under the laws of Washington, headquartered in Republic, Washington, with offices in Republic and in Spokane, Washington.  Kettle Range Conservation Group advocates the protection and restoration of natural ecosystems in the Pacific Northwest.

11.    Plaintiff IDAHO SPORTING CONGRESS is a non-profit conservation organization based in Boise, Idaho whose members reside mostly in Idaho but also in many other states and countries.  The Idaho Sporting Congress actively participates in the agency proceedings and decisions concerning the management of national forests within Idaho.  The Idaho Sporting Congress and its members have participated in Forest Service management decisions and programs since 1983.  The Idaho Sporting Congress has commented on, appealed, and litigated many Forest Service timber sales and grazing plans, participated in many field trips with Forest

1 Service personnel and joined in agency consensus groups intended to guide Forest Service
2 management.

3       12.    Plaintiff FRIENDS OF THE CLEARWATER is a 501(c)(3) grassroots
4 conservation organization dedicated to preserving the wildlands and ecological integrity of the
5 Clearwater River basin, which includes the Clearwater, Nez Perce, and St. Joe National Forests in
6 Idaho. Friends of the Clearwater is based in Moscow, Idaho and has been active in many aspects
7 of local forest planning. Friends of the Clearwater participates in public involvement processes
8 through comments, public meetings, and open houses and also sponsors free public events, field
9 trips and seminars. Friends of the Clearwater's members and supporters are also active in these
10 processes.

11       13.    Plaintiff UTAH ENVIRONMENTAL CONGRESS is a 501(c)(3) environmental
12 organization dedicated to the protection and preservation of Utah's national forests and native
13 wildlife species. The Utah Environmental Congress has individual, organization, and business
14 members representing about 30,000 citizens. Seventy percent of the State of Utah is held in trust
15 as public land for all American citizens. The Utah Environmental Congress is committed to
16 holding public land management agencies accountable to federal environmental laws.
17
18       14.    Plaintiff CASCADIA WILDLANDS PROJECT is a 501(c)(3) conservation
19 organization based in Eugene, Oregon, with members in Washington, Oregon, and California.
20 The Cascadia Wildlands Project advocates for biodiversity on public lands, with a particular
21 emphasis on the national forests in the Cascadia region. The Cascadia Wildlands Project has a
22 long-standing interest in the sound management of public lands in the region, and is involved with
23 a number of projects and campaigns to protect salmon and other threatened and endangered fish
24 species.

25       15.    Plaintiff KLAMATH SISKIYOU WILDLANDS CENTER is a 501(c)(3)
26 conservation organization with over 600 members. The Klamath Siskiyou Wildlands Center is
27 dedicated to protecting the unique biological diversity, clean water, old growth forests, and
28 aesthetic values of the Klamath-Siskiyou bioregion of southwestern Oregon and northern

1   California.  Klamath Siskiyou Wildlands has an interest in ensuring that NEPA, the National

2   Forest Management Act, and other environmental laws are enforced on national forests.

3          16.    Plaintiff SOUTHERN APPALACHIAN BIODIVERSITY PROJECT is a non-

4   profit, tax-exempt corporation organized under the laws of North Carolina.  The Southern

5   Appalachian Biodiversity Project is a regional citizens organization dedicated to defense and

6   restoration of the native biodiversity of Southern Appalachia.  The Southern Appalachian

7   Biodiversity Project is actively involved in National Forest protection issues throughout the

8   southeastern United States, and has members throughout the region.

9          17.    Plaintiff THE LANDS COUNCIL is a regional nonprofit environmental

10  organization with its principal office in Spokane, Washington.  The Lands Council has members

11  in Washington, Oregon, Idaho, Montana, and other states.  The Lands Council is dedicated to

12  promoting long-term community and biological sustainability of the greater Columbia River Basin

13  through education and participation in public agency decision-making processes.  The Lands

14  Council oversees forest-watch groups in Washington, Oregon and Idaho.

15         18.    Plaintiff FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS

16  ("FSEEE") is a nonprofit organization headquartered in Eugene, Oregon.  FSEEE's mission is to

17  forge a socially responsible value system for the Forest Service based on a land ethic that ensures

18  ecologically and economically sustainable resource management.  Thousands of concerned

19  citizens, present, former, and retired Forest Service employees and other resource managers

20  comprise FSEEE.

21

22         19.    Plaintiffs' members use and enjoy national forests for hiking, fishing, hunting,

23  camping, photographing scenery and wildlife, and engaging in other vocational, scientific, and

24  recreational activities.  Plaintiffs' members derive recreational, inspirational, religious, scientific,

25  educational, and aesthetic benefit from their activities within the national forest system.

26  Plaintiffs' members intend to continue to use and enjoy the national forests frequently and on an

27  ongoing basis in the future, including this summer and fall.

28         20.    The aesthetic, recreational, scientific, educational and religious interests of

1    Plaintiffs' members have been and will continue to be adversely affected and irreparably injured if

2    Defendants continue to implement the 2000 Rule. These are actual, concrete injuries caused by

3    Defendants' failure to comply with mandatory duties under NEPA and the APA. The injuries

4    would be redressed by the relief sought.

5       21.    Plaintiffs and their members have been extensively involved in the public comment

6    and administrative process for both the 2000 and 2005 Rules.

7       22.    Defendant UNITED STATES DEPARTMENT OF AGRICULTURE is the

8    executive agency that oversees the United States Forest Service. The Secretary of Agriculture is

9    responsible for promulgating regulations pursuant to the National Forest Management Act.

10       23.    Defendant UNITED STATES FOREST SERVICE is an agency of the Department

11    of Agriculture. It and its officers are responsible for the lawful management of the national forest

12    system.

13

## SUMMARY OF FACTS AND GENERAL ALLEGATIONS

14

I.      THE NATIONAL FOREST MANAGEMENT ACT ("NFMA")

15

16       24.    The National Forest System includes 192 million acres of land in 42 states, the

17    Virgin Islands, and Puerto Rico. The system is comprised of 155 national forests, 20 national

18    grasslands, and various other lands under the jurisdiction of the Department of Agriculture.

19       25.    The national forests and grasslands provide many and diverse benefits to the

20    American people, including clean air and water, productive soils, biological diversity, goods and

21    services, and recreation. Even though much of the National Forest System has been significantly

22    degraded, the national forests generally remain less disturbed than the private lands surrounding

23    them, and provide increasingly important habitat for many plant and animal species.

24       26.    Congress enacted the National Forest Management Act ("NFMA") in 1976.

25    During Senate hearings on NFMA, Senator Hubert Humphrey observed that the Forest Service's

26    record had brought into question the extent to which the agency could be trusted to guard and

27    manage public resources. Senator Humphrey declared: "The days have ended when the forest

28    may be viewed only as trees and trees viewed only as timber. The soil and the water, the grasses

1   and the shrubs, the fish and the wildlife, and the beauty that is the forest must become integral
2   parts of resource managers' thinking and actions."

3          27.    NFMA sets forth a three-tiered approach to forest management. At the highest tier,
4   NFMA requires the Secretary of Agriculture to promulgate national regulations that govern the
5   development of regional and site-specific plans. 16 U.S.C. § 1604(g). The national regulations
6   require that the lower level plans comply with NEPA, and require the Secretary of Agriculture to
7   set standards and guidelines regarding forest resources such as plant and animal species
8   conservation, timber management, and water management. The nationwide, regulatory standards
9   and guidelines must be followed when the Forest Service prepares regional or site-specific plans.
10  This highest-tier of national regulations is at issue in this case.

11         28.    The second tier of regulatory oversight on national forest system lands is the "land
12  and resource management plan" ("Forest Plan") that is prepared for each individual national forest
13  or grassland. 16 U.S.C. § 1604(a). The Forest Plans operate like zoning ordinances, defining the
14  uses allowed in various areas of each forest, and setting goals and limits on various uses, such as
15  logging and road construction. The content and promulgation of the Forest Plans must comply
16  with the national regulations.

17         29.    The third tier is the so-called "site-specific" plans, which are prepared to effect
18  specific, on-the-ground actions. Site-specific plans must be consistent with both sets of higher-
19  level rules, that is, both the applicable Forest Plan as well as the nationwide NFMA regulations.
20  16 U.S.C. § 1604(i).
21
22         30.    NFMA requires the Secretary of Agriculture to promulgate regulations that set out
23  the process for the development and revision of Forest Plans, and include the guidelines and
24  standards that are prescribed in the statute. The regulations promulgated under NFMA must
25  include, among other things, procedures to insure that Forest Plans are prepared in accordance
26  with NEPA; guidelines which require the identification of the suitability of lands for resource
27  management; guidelines which provide for diversity of plant and animal communities based on
28  the suitability and capability of the specific land area; guidelines to insure that timber is harvested

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                        Page 8

1   from national forest lands only where soil, slope and watershed conditions are not irreversibly

2   damaged, and protection is provided for streams and other bodies of water from detrimental

3   changes in water temperatures and sediment; and guidelines which insure that clearcutting will be

4   used as a cutting method on National Forest System lands only where there are established

5   according to geographic areas, forest types, or other suitable classifications the maximum size

6   limits for areas to be cut in one harvest operation.

7        31.    NFMA requires the Secretary of Agriculture to appoint a "Committee of

8   Scientists" who are not officers or employees of the Forest Service to provide scientific and

9   technical advice and counsel in promulgating NFMA regulations. NFMA provides that the

10   Secretary may appoint such a committee when revising the regulations.

11   II.      THE 1982 NFMA REGULATIONS

12        32.    Defendants first promulgated regulations implementing NFMA in 1979. 44 Fed.

13   Reg. 53928 (Sept. 17, 1979). The 1979 regulations were accompanied by an "environmental

14   impact statement" ("EIS"), which analyzed the environmental impact of the regulations.

15        33.    After convening a Committee of Scientists to obtain its advice, the Department of

16   Agriculture revised the NFMA regulations in 1982. 47 Fed. Reg. 43026 (Sept. 30, 1982). When

17   initially published as a draft rule, the 1982 regulations were accompanied by an "environmental

18   assessment" ("EA"), but not an EIS. 47 Fed. Reg. 7678, App. A at 7694 (Feb. 22, 1982).

19

20        34.    The 1982 NFMA regulations set out a comprehensive approach to forest

21   management, implementing the statutory directive. The 1982 NFMA regulations applied to and

22   governed the promulgation and management of Forest Plans, and also applied to and governed

23   individual, site-specific projects proposed on national forests.

24        35.    The 1982 NFMA regulations require the Forest Service to manage fish and wildlife

25   habitat to maintain viable populations of existing native and desired non-native species in the

26   planning area. Under the 1982 regulations, a viable population is regarded as one which has the

27   estimated numbers and distribution of reproductive individuals to insure its continued existence is

28   well distributed in the planning area. The 1982 NFMA regulations provide that, in order to insure

1   that viable populations will be maintained, habitat must be provided to support, at least, a

2   minimum number of reproductive individuals and that habitat must be well distributed so that

3   those individuals can interact with others in the planning area.

4          36.     In order to estimate the effects of activities on fish and wildlife populations, the

5   1982 regulations require the Forest Service to identify "management indicator species," which are

6   used as a bellwether for the other species that have the same special habitat needs or population

7   characteristics. The Forest Service is required to monitor the population trends of the

8   management indicator species, and planning alternatives are to be evaluated in terms of both the

9   amount and quality of habitat and of animal population trends of the management indicator

10  species. The Forest Service has frequently failed to comply with its monitoring and viability

11  requirements for management indicator species.

12         37.     The 1982 NFMA regulations set forth specific, mandatory requirements governing

13  both the development and implementation of Forest Plans. According to these requirements, all

14  management prescriptions must, among other things, conserve soil and water resources and not

15  allow significant or permanent impairment of the productivity of the land; protect streams,

16  streambanks, shorelines, lakes, and wetlands; provide for adequate fish and wildlife habitat to

17  maintain viable populations of existing native vertebrate species; and include measures for

18  preventing the destruction or adverse modification of critical habitat for threatened and

19  endangered species.

20

21         38.     The 1982 NFMA regulations require that special attention be given to land and

22  vegetation for approximately 100 feet from the edges of all perennial streams, lakes, and other

23  bodies of water. Within this riparian area, no management activities causing detrimental changes

24  in water temperature or chemical composition, blockages of water courses, or deposits of

25  sediment are permitted which seriously and adversely affect water conditions or fish habitat.

26         39.     The 1982 NFMA regulations require that the conservation of soil and water

27  resources be guided by instructions in official technical handbooks, which must show specific

28  ways to avoid or mitigate damage, and maintain or enhance productivity on specific sites.

40.     The 1982 NFMA regulations require, with limited exceptions, that clearcuts not exceed 60 acres for the Douglas-fir forest type of California, Oregon and Washington; 80 acres for the southern yellow pine types; 100 acres for the hemlock-sitka spruce forest type of coastal Alaska; and 40 acres for all other forest types.

41.     The 1982 NFMA regulations require the preservation and enhancement of the diversity of plant and animal communities so that such diversity is at least as great as that which would be expected in a natural forest.

42.     The 1982 NFMA regulations require that lands suitable for grazing be identified and their condition and trend determined. The present and potential supply of forage for livestock, wild and free-roaming horses and burros, and the capability of these lands to produce suitable food and cover for selected wildlife species must be estimated. Lands in less than satisfactory condition must be identified and appropriate action planned for their restoration.

43.     The 1982 NFMA regulations require that forest planning identify the physical and biological characteristics that make land suitable for recreational opportunities. Off-road vehicle use is required to be planned and implemented to protect the land and other resources. Forest planning must classify areas and trails of National Forest System lands as to whether or not off-road vehicle use may be permitted.

44.     The 1982 NFMA regulations require a regional guide to be developed for each region of the Forest Service. Regional guides must provide standards and guidelines for addressing major issues and management concerns which need to be considered at the regional level to facilitate forest planning. The 1982 NFMA regulations require that an environmental impact statement by prepared for the proposed standards and guidelines in the regional guide, according to NEPA procedures. The Chief of the Forest Service is required, under the 1982 NFMA regulations, to either approve or disapprove each regional guide, and issue his decision in a record of decision, pursuant to NEPA.

45.     The 1982 NFMA regulations establish a process for amending and revising existing forest plans. Pursuant to the 1982 NFMA regulations, if a forest supervisor determines

1    that a proposed amendment is significant, the supervisor is required to follow the same procedures

2    as that required for development and approval of an initial forest plan. If the amendment is

3    determined not to be significant, the supervisor is still required to satisfy NEPA procedures.

4        46.    The 1982 NFMA regulations require each forest supervisor to review the

5    conditions of the forest at least every 5 years to determine whether conditions or demands of the

6    public have changed significantly. According to the 1982 NFMA regulations, a forest plan must

7    be revised on a 10-year cycle or at least every 15 years.

8    III.    THE NOVEMBER 9, 2000, NFMA REGULATIONS

9        47.    In 1991, the Forest Service published notice that it was going to revise the 1982

10   NFMA regulations. On April 13, 1995, the Forest Service published a proposed rule, which was

11   never finalized.

12       48.    In June, 1996, the Forest Service prepared a one-page "biological assessment" for

13   its "effort to revise and streamline land and resource management planning procedures for the

14   National Forest System." According to the 1996 biological assessment, at that time, over 280

15   threatened or endangered species were known to occur on National Forest System lands.

16       49.    In December, 1997, the Secretary of Agriculture convened a 13-member

17   "Committee of Scientists" to review the Forest Service planning process and to offer

18   recommendations for revising the regulations. In March, 1999, the Committee of Scientists

19   released a final report concerning the Forest Service planning process.

20

21       50.    On October 5, 1999, the Forest Service published a proposed rule to revise the

22   1982 NFMA regulations. Unlike the previous draft rules concerning the NFMA regulations, the

23   1999 proposed rule did not include any analysis of its potential environmental impact and did not

24   specifically solicit comments on this matter.

25       51.    On July 21, 2000, the Forest Service completed a "National Forest System Land

26   and Resource Management Planning Final Rule Environmental Assessment and Civil Rights

27   Impact Assessment" ("EA"). The Forest Service did not request or seek public comment on its

28   July, 2000, EA, and did not publish public notice regarding the preparation of the July, 2000, EA.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                    Page 12

52.     On July 21, 2000, the same day that the EA was completed, the Forest Service prepared a "Finding of No Significant Impact" ("FONSI") for the National Forest System Land and Resource Management Planning Rule, determining that the proposed action would not constitute a "major federal action," and thereby require preparation of an EIS. The Forest Service did not publish public notice regarding the July, 2000, FONSI.

53.     The Forest Service never completed a "biological assessment" of the proposed rule's impact on endangered species under the ESA, and did not engage in formal consultation with the Secretaries of the Interior or Commerce.

54.     On November 9, 2000, the Forest Service published the National Forest System Land and Resource Management Planning Final Rule ("2000 Rule") in the Federal Register. 65 Fed. Reg. 67513 (Nov. 9, 2000).

55.     The 2000 Rule substantially modified the 1982 regulations in a number of ways. The 2000 Rule eliminated many of the "minimum management requirements" from the 1982 regulations. The 2000 Rule also weakened the species "viability" requirement by providing that plan decisions affecting species diversity must provide only for ecological conditions that provide a high likelihood that those conditions are capable of supporting over time the viability of species. The 2000 Rule eliminated the requirement of developing regional guides to maintain consistency in forest management.

56.     Many of the plaintiffs in this case filed suit in 2001 to challenge the 2000 Rule. After the suit was filed, the Department of Agriculture announced that it was considering revising the 2000 Rule, noting that serious concerns had arisen regarding some of the provisions of the 2000 Rule, including the Rule's impact on ecological sustainability and species viability. *See* 66 Fed. Reg. 27552 (May 17, 2001). The Department of Agriculture issued a new "interim rule" to extend for one year the date by which forest plan amendments and revisions were required to comply with the 2000 Rule. *Id.* During the interim period, national forests were allowed to choose between the 1982 regulations or the 2000 Rule when preparing amendments or revisions to forest plans. *Id.* at 27,553.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                    Page 13

1    57.    Because of Department of Agriculture announcements that it was developing a new

2    rule to replace the 2000 Rule, the plaintiffs agreed to stay their substantive NFMA claims pending

3    the determination as to whether and how to revise the 2000 Rule. The Department of Agriculture,

4    however, did not propose to cure any of the procedural violations that accompanied adoption of

5    the 2000 Rule, and the plaintiffs therefore moved for summary judgment on their procedural

6    claims. On February 20, 2002, the district court granted the defendants' motion for partial

7    summary judgment on the plaintiffs' procedural claims, holding that the suit was not justiciable

8    for lack of standing and ripeness. This decision was reversed by the United States Court of

9    Appeals for the Ninth Circuit in *Citizens for Better Forestry v. U.S. Department of Agriculture*,

10   341 F.3d 961 (9th Cir. 2003).

11   58.    In finding that the plaintiffs had standing, and that their procedural claims were

12   ripe for judicial review, the Ninth Circuit also ruled that the defendants violated NEPA in the

13   development and promulgation of the 2000 Rule. Specifically, the defendants violated NEPA by

14   failing to inform and involve the public in the preparation of the EA for the 2000 Rule. As

15   explained by the Ninth Circuit:

16
          Citizens were deprived of the opportunity to comment on the USDA's EA and
17        FONSI at all points in the rulemaking process. This deprivation violated their
          rights under the regulations implementing NEPA. See 40 C.F.R. 1501.4(b) ("The
18        agency shall involve the public, to the extent practicable, in preparing [EAs] . . .");
          id. 1506.6 ("Agencies shall . . . [m]ake diligent efforts to involve the public in
19        preparing and implementing their NEPA procedures[,] . . . [p]rovide public notice
          of . . . the availability of environmental documents so as to inform those persons . .
20        . who may be interested or affected [,] [and] . . . [s]olicit appropriate information
          from the public.").
21

22   Citizens, 341 F.3d at 970. The Ninth Circuit concluded:

23        Although we have not established a minimum level of public comment and
          participation required by the regulations governing the EA and FONSI process, we
24        clearly have held that the requirements at issue must mean something. It is
          evident, therefore, that a complete failure to involve or even inform the public
25        about an agency's preparation of an EA and a FONSI, as was the case here,
          violates these regulations. This wholesale neglect of the regulations' mandatory
26        inclusion of the public in the process results in procedural injury. Moreover, it
          undermines the very purpose of NEPA, which is to "ensure[ ] that federal agencies
27        are informed of environmental consequences before making decisions and that the
          information is available to the public."
28
     Id. at 970-971 (citations omitted).

     COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                    Page 14

1    59.    After the Ninth Circuit's decision, the Department of Agriculture extended the

2    transition for site-specific projects in an "interim" rule, 68 Fed. Reg. 53,294 (September 10,

3    2003), which extended the date which site-specific projects must comply with the 2000 Rule until

4    the date of the adoption of the new planning regulations. Id.

5    60.    The Department of Agriculture subsequently issued an "interpretative" rule on

6    September 29, 2004. 69 Fed. Reg. 58,055 (Sept. 29, 2004). This interpretative rule stated that

7    because of the transition provision in the 2000 Final Rule, the 1982 NFMA regulations were no

8    longer in effect, at least for site-specific projects. *See* 69 Fed. Reg. at 58,057, App. B to Sec.

9    219.35 ("Until a new final rule is promulgated, the transition provisions of [the 2000 Final Rule]

10   remain in effect. The 1982 rule is not in effect."). Since the Department of Agriculture had also

11   extended the date by with site-specific projects must comply with the 2000 Rule, the

12   Department's new position was that there were no regulations to govern any activities on the 192

13   million acre National Forest System. The only provision that applied to any site-specific project

14   on any national forest, according to the Department of Agriculture, was that the Forest Service

15   was required to "consider" (but not necessarily use or apply) the "best available science." *Id.*

16   61.    On January 5, 2005, the Department of Agriculture issued a new final rule to

17   formally withdraw and remove the 2000 Rule. 70 Fed. Reg. 1022 (Jan. 5, 2005).

18   62.    On July 24, 2006, this Court reviewed the Ninth Circuit's decision in *Citizens for*

19   *Better Forestry* for purposes of resolving the plaintiffs' motion for attorneys' fees and costs, and

20   ruled that the Ninth Circuit's conclusion that defendants violated NEPA in developing the 2000

21   Rule was germane to the eventual resolution of the case, was a ruling on the merits, and is the law

22   of the Ninth Circuit. *Citizens for Better Forestry, et al. v. U.S. Dept. of Agriculture*, Civ. No. 01-

23   728 MJJ (EMC) (N. D. Cal.) (July 24, 2006, Report and Recommendation Re: Plaintiffs' Motion

24   for Attorneys' Fees and Costs) *and* (April 17, 2007, Order adopting without change the Report

25   and Recommendations).

26   

27   IV.    THE JANUARY 5, 2005 NFMA REGULATIONS

28   63.    On December 6, 2002, Defendants published a new draft forest planning rule in the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                    Page 15

1  federal register ("2002 Proposed Rule"). 67 Fed. Reg. 72770 (Dec. 6, 2002). The Forest Service

2  asserted that the 2002 Proposed Rule retained many of the basic concepts of the 2000 Rule, but

3  was an adjustment to the 2000 Rule.

4      64.    On December 22, 2004, two years after publication of the 2002 Proposed Rule,

5  Defendants announced completion of a final rule. The final rule was published in the federal

6  register on January 5, 2005 (70 Fed. Reg. 1023), and stated that it was effective on January 5,

7  2005.

8      65.    The Forest Service stated in the 2002 Proposed Rule that it proposed to

9  "categorically exclude" the entire rule from NEPA review. Unlike the 1979, 1982, and 2000

10  regulations, the Forest Service did not prepare an EA or EIS to assess the potential environmental

11  impacts of the 2002 Proposed Rule or the 2005 Rule. The Forest Service also did not prepare a

12  "biological assessment" to assess the potential impacts of the 2002 Proposed Rule or the 2005

13  Rule on threatened and endangered species, and did not consult with the United States Fish and

14  Wildlife Service or National Marine Fisheries Service, pursuant to Section 7 of the ESA.

15      66.    The Forest Service stated that its 2005 Rule "embodies a paradigm shift in land

16  management planning." The Forest Service acknowledged that its 2005 Rule is "less prescriptive

17  in nature" than the 1982 regulations. In fact, the 2005 Rule eliminated nearly all mandatory

18  management requirements of the 1982 regulations.

19      67.    The 1982 regulations and 2000 Rule applied to both Forest Plans and site-specific

20  projects on national forests. Defendants claimed, however, that the 2005 Rule applied to only

21  Forest Plans, and not site-specific projects.

22

23      68.    In March, 2005, most of the plaintiffs in this case filed suit to challenge the 2005

24  Rule. On March 30, 2007, this Court held that the Department of Agriculture and Forest Service

25  violated NEPA, the Endangered Species Act, and the Administrative Procedure Act in developing

26  the 2005 Rule. Order of March 30, 2007, in *Citizens for Better Forestry, et al. v. U.S. Dept. of*

27  *Agriculture, et al.*, Civ. No. 05-1144 PJH (N. D. Cal. 2007). The Court enjoined the defendants

28  from implementing and utilizing the 2005 Rule until it has complied with the pertinent statutes.

69.     On April 13, 2007, defendants filed a motion to amend and/or alter the March 30, 2007, decision, and to limit the scope of the injunction to only this district. On July 3, 2007, this Court denied defendants' motion and confirmed that its March 30, 2007 injunction regarding the 2005 Rule is a nationwide injunction that is not limited to this district.

V.     THE APRIL 27, 2007, DECISION TO RESURRECT AND IMPLEMENT THE 2000 RULE

70.     On April 27, 2007, defendants issued nationwide direction to all Regional Foresters in response to this Court's March 30, 2007, decision enjoining the Forest Service from implementing the 2005 Rule. The April 27, 2007, memorandum states that "[t]he 2000 planning rule, including its transition provisions as clarified by the 2004 interpretative rule, is now in effect."

71.     Defendants did not provide any public notice or accept any public comment prior to the April 27, 2007 decision to reinstate the 2000 Rule.

72.     Defendants have not cured the NEPA deficiencies and violations found by the Ninth Circuit regarding the 2000 Rule in *Citizens for Better Forestry v. U.S. Department of Agriculture*, 341 F.3d 961 (9th Cir. 2003).

73.     Defendants did not conduct or prepare any NEPA analysis on the 2004 "interpretative rule" or the April 27, 2007, nationwide direction stating that the 2000 Rule is "now in effect."

74.     Based on the April 27, 2007, nationwide direction, individual national forests across the country are now implementing site-specific projects pursuant to the "transition provision" of the 2000 Rule. As a result, the Forest Service is not assessing whether site-specific projects and activities comply with the mandatory standards and guidelines of the 1982 NFMA regulations. Moreover, the Forest Service is not assessing whether site-specific projects and activities comply with the standards and guidelines of the 2000 Rule. Instead, the Forest Service's current position, based on the April 27, 2007, direction, is that for all site-specific projects on national forests, the agency only needs to look to the transition provision of the 2000 Rule and "consider" the best available science.

## FIRST CLAIM FOR RELIEF

Defendants' April 27, 2007, Decision to Implement the 2000 Rule Violates the APA

75.    Plaintiffs hereby incorporate by reference all preceding paragraphs.

76.    On January 5, 2005, Defendants published a final rule in the federal register to formally remove the 2000 Rule in its entirety, effective immediately. 70 Fed. Reg. 1022 (January 5, 2005).

77.    Since its January 5, 2005, final rule withdrawing the 2000 Rule, Defendants have not provided the public with any opportunity for notice and comment regarding its subsequent decision on April 27, 2007, to reinstate the 2000 Rule.

78.    Defendants' April 27, 2007, decision to reinstate and implement the 2000 Rule, without providing any public notice or opportunity for public comment, violates the APA. 5 U.S.C. § 553. The April 27, 2007, decision is therefore arbitrary, capricious, an abuse of discretion, not in accordance with the law, and without observance of procedure required by law. 5 U.S.C. § 706. The April 27, 2007, decision should therefore be held to be unlawful and set aside. *Id.*

## SECOND CLAIM FOR RELIEF

Defendants' April 27, 2007, Decision to Implement the 2000 Rule Violates NEPA

79.    Plaintiffs hereby incorporate by reference all preceding paragraphs.

80.    NEPA requires federal agencies to prepare a detailed "environmental impact statement" for every major federal action which may significantly affect the quality of the human environment. 42 U.S.C. § 4332(2)(C). "Action," for purposes of NEPA, includes new or revised agency rules, regulations, plans, policies, and procedures. 40 C.F.R. § 1508.18(a). Federal action includes the adoption of official policy, such as rules and regulations. 40 C.F.R. § 1508.18(b)(1).

81.    NEPA requires an environmental assessment ("EA") when necessary to determine whether to prepare an EIS. 40 C.F.R. § 1501.4. The EA must provide the decision maker and the public with adequate information, evidence, and analysis to assess the potential impacts of the proposed actions. 40 C.F.R. § 1508.9.

82.    The United States Court of Appeals for the Ninth Circuit, and this Court, have already determined that Defendants violated NEPA in developing the 2000 Rule. *Citizens for Better Forestry v. U.S. Department of Agriculture*, 341 F.3d 961, 970-71 (9th Cir. 2003); *Citizens for Better Forestry, et al. v. U.S. Dept. of Agriculture*, Civ. No. 01-728 (N. D. Cal.) (July 24, 2006, Report and Recommendation).

83.    Defendants have not cured the NEPA deficiencies with the 2000 Rule, and have not conducted or prepared any additional NEPA analysis regarding the 2000 Rule prior to deciding on April 27, 2007 to reinstate the 2000 Rule.

84.    Defendants' April 27, 2007, decision to reinstate the 2000 Rule across the National Forest System, without preparing a lawful NEPA analysis on the 2000 Rule and without curing the NEPA deficiencies regarding the 2000 Rule, violates NEPA and is arbitrary, capricious, an abuse of discretion, not in accordance with law, and without the observance of procedures required by law. 5 U.S.C. § 706. The April 27, 2007, decision should therefore be held to be unlawful and set aside. *Id.*

### RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    Declare that Defendants' April 27, 2007, decision to reinstate and implement the 2000 Rule violates the APA;

B.    Declare that Defendants' April 27, 2007, decision to reinstate and implement the 2000 Rule violates NEPA;

C.    Enjoin Defendants from any further implementation of the April 27, 2007, decision pending compliance with the APA and NEPA;

D.    Enjoin Defendants from any further implementation of the 2000 Rule pending compliance with NEPA and other federal laws;

E.    Declare that the 1982 NFMA regulations are in effect to govern the Forest Service's revision and amendment of Forest Plans, and the implementation of individual, site-specific projects and decisions, on the National Forest System;

1    F.    Allow Plaintiffs to recover costs, expenses, expert witness fees, and reasonable

2 attorney fees under applicable law; and

3    G.    Grant Plaintiffs such further relief as may seem to this Court to be just, proper, and

4 equitable.

5

6 Dated this 26th day of July, 2007.            Respectfully submitted,

7

8

9 Lisa T. Belenky (CA Bar # 203225)
CENTER FOR BIOLOGICAL DIVERSITY

10 1095 Market St., Suite 511
San Francisco, CA 94103

11 Telephone: (415) 436-9682 x307
Facsimile: (415) 436-9683

12 Email: lbelenky@biologicaldiversity.org

13 Peter M.K. Frost, *application for pro hac vice
pending*

14 Western Environmental Law Center
1216 Lincoln Street

15 Eugene, Oregon 97401
Tel: 541-485-2471

16 Fax: 541-485-2457
frost@westernlaw.org

17

Marc D. Fink, *application for pro hac vice pending*

18 Center for Biological Diversity
4515 Robinson Street

19 Duluth, Minnesota 55804
Tel: 218-525-3884

20 Fax: 218-525-3857
mfink@biologicaldiversity.org

21

Attorneys for Plaintiffs

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                    Page 20